**Kimberley Joan FAIR, Plaintiff,**

**v.**

**GUIDING EYES FOR THE BLIND, INC., Defendant.**

**No. 89 Civ. 3980 (GLG).**

United States District Court, S.D. New York.

July 24, 1990.

John W. Whittlesey, Chappaqua, N.Y. by John W. Whittlesey, for plaintiff.

Kent, Hazzard, Jaeger, Greer, Wilson & Fay, White Plains, N.Y. by Robert G. O'Donnell, for defendant.

## OPINION

GOETTEL, District Judge.

This employment discrimination case was commenced by the plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging sex discrimination and sexual harassment. The defendant has moved for summary judgment.

### I. FACTS

The plaintiff, Kimberley Joan Fair, is the former Associate Director of Admissions for the defendant corporation Guiding Eyes for the Blind, Inc. Guiding Eyes is a non-profit corporation with more than a dozen employees whose chief purpose is to train and educate persons in the use of guide dogs.

The plaintiff was hired effective June 15, 1987, by Martin A. Yablonski, Executive Director of Guiding Eyes. During the first six months at Guiding Eyes all new employees participate in a probationary period during which time they may be released unconditionally. The plaintiff's job responsibilities varied, ranging from recruitment

and admission of students to serving as the assistant to the Executive Director. The plaintiff earned an annual salary of $28,-000. Much of the plaintiff's job required that she work closely with Mr. Yablonski. Although the plaintiff and Mr. Yablonski worked well together at the start, their relationship, according to the plaintiff, rapidly deteriorated ultimately giving rise to the instant sexual harassment action.[1]

The plaintiff's sexual harassment claim stems from many conversations she had with Mr. Yablonski. The plaintiff contends that Mr. Yablonski repeatedly spoke to her about his alleged homosexuality [2] and tried to draw her into conversation on the topic of sexual preference as early as her first day of work. Because the nature of these conversations is germane to the plaintiff's action and this motion, we will delineate them here. The following are the alleged incidents which the plaintiff contends constitute sexual harassment:

* On June 14, 1987, the plaintiff's first day of work at Guiding Eyes, Mr. Yablonski and plaintiff were at a work-related golf course function. Mr. Yablonski referred to a man as a "bitch" and said that the man had the gall to have sexual relations with a certain woman.

* The next day he told the plaintiff that he hated another man's former wife because she knew too many of her ex-husband's secrets.

* Also that day, Mr. Yablonski challenged the plaintiff's support for the Pope because of his views on abortion and homosexuality.

* A couple of days later, Mr. Yablonski made belittling comments about a man dressed in pastel pants and discussed the apparent significance of a man having a pierced ear as denoting his homosexuality.

* Around June 18, 1989, while the plaintiff and Mr. Yablonski were watching a slide demonstration on blindness in the Third World, Mr. Yablonski remarked that a sexually transmitted disease caused blindness.

* About mid-July, Mr. Yablonski told the plaintiff that she should not drink Minute Maid orange juice because of the anti-homosexual remarks made by Anita Bryant, a former spokesperson for the brand, over a decade ago.

* Mr. Yablonski revealed to the plaintiff that he had seen a psychiatrist who had told him he would never have a meaningful relationship.

* On August 22, 1987, Mr. Yablonski remarked that all the women present at a meeting were "looking at [a certain man at the meeting] and salivating, thinking about all that slurpy sex!" To which the plaintiff responded, "women don't drool, Martin, we get breathless...."

* In mid-September, 1987, the plaintiff was revising the school's application and medical form from which Mr. Yablonski wanted to solicit symptomology of AIDS. There was some disagreement between the two as to what information could be sought from potential students. The plaintiff was more conservative than Mr. Yablonski in her estimate of what information Guiding Eyes could seek from potential students.

* On September 28, 1987, Mr. Yablonski told the plaintiff about an event he attended with his alleged lover Fred where they were treated poorly.

* That same day Mr. Yablonski asked the plaintiff whether she agreed with him in his assumption that a particular board member was a homosexual.

The plaintiff asserts that as a result of her reluctance to speak with him on subjects she considered offensive, Mr. Yablonski's attitude toward her changed. By mid-

---

1. As always, for the purpose of summary judgment, we interpret the facts in the light most favorable to the non-moving party, here the plaintiff. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

2. Plaintiff has made discovery motions to compel Mr. Yablonski to testify as to his sexual preference. We have denied these requests on the grounds that the sexual preference of Mr. Yablonski has no bearing in this case.

September, the plaintiff had made clear her position that she was offended by Mr. Yablonski's attempts at discussing sexual matters. From that point forward, their working relationship deteriorated. On October 22, 1987, while the plaintiff was still on probation, Mr. Yablonski dismissed the plaintiff from her employment at Guiding Eyes. In terminating the plaintiff's employment, Mr. Yablonski told her that she "wasn't working out" and that he "wanted to cut his losses." Mr. Yablonski contends that her work was not satisfactory, and that others complained similarly about her inadequate performance. The plaintiff, however, alleges that she was terminated solely because of her status as a woman and that she was not aware of Mr. Yablonski's dissatisfaction with her work prior to her discharge. The plaintiff was replaced by a man hired from within the organization.

The plaintiff claims that Guiding Eyes wrongfully discharged her because she would not discuss sexual matters with her superior Mr. Yablonski. The plaintiff asserts that the defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e–2; 42 U.S.C. § 1983; and § 296 of the New York Executive Law by discharging her because of her sex and because of her refusal to submit to sexual harassment by the defendant's employee.[3]

## II. SUMMARY JUDGMENT STANDARD

The defendant has moved for summary judgment. Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden is on the moving party to demonstrate the absence of a material, factual dispute. Fed.R.Civ.P. 56(e); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). If that burden is met, the non-moving party "must set forth specific facts showing that there is a genuine need for trial," Fed.R.Civ.P. 56(e),

and there must be more than merely "some metaphysical doubt as to [those] material facts." *Matsushita Ele. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). In determining whether that burden is met, however, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving parties. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). We shall apply these principles as we consider the defendant's motion for summary judgment.

## III. SECTION 1983 CLAIM

■ As an initial matter, the plaintiff's section 1983 claim must be dismissed. A cause of action under section 1983 lies only where there has been a deprivation of rights or privileges under color of state law. 42 U.S.C. § 1983. Although section 1983 has been the predicate for many types of employment discrimination suits, including suits alleging sexual harassment, section 1983 is not a basis for such claims where the defendant has not acted under color of state law. No nexus between the defendant's action and the state is alleged. Nor is the Guiding Eyes a local government entity which could be subject to municipal liability. *Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Consequently, the plaintiff's claim based on 42 U.S.C. § 1983 is dismissed.

## IV. TITLE VII CLAIM

To defeat the defendant's motion for summary judgment on the plaintiff's Title VII claims, the plaintiff must initially make out a prima facie case of sexual harassment. The defendant may discharge the burden of proof in rebuttal by showing a legitimate, nondiscriminatory reason for the plaintiff's dismissal. The burden then shifts back to the plaintiff who must prove that the defendant's reasons for dismissal were just a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411

---

**3.** Plaintiff seeks reinstatement to her former position, back pay, damages for emotional distress, punitive damages, costs and attorneys' fees and injunctive relief.

U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). If the plaintiff is unable to succeed in this endeavor, summary judgment must be granted.

■ As to the claim of sexual harassment under Title VII of the Civil Rights Act of 1964, there are multiple elements which must be satisfied. 42 U.S.C. § 2000e–2(a). The plaintiff does not allege "quid pro quo" sexual harassment, but, rather, attempts to prove her sexual harassment claims on a "hostile work environment" theory. *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65–66, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986). In order to establish a prima facie case of sexual harassment resulting in the creation of a hostile work environment, the plaintiff must demonstrate that: (1) she belongs to a protected group, (2) she was the subject of unwelcome sexual harassment, (3) the harassment was based on her sex, (4) the sexual harassment affected a term, condition or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take remedial action. *See id.* at 63–69, 106 S.Ct. at 2403–06 (1986); *Jones v. Flagship Int'l,* 793 F.2d 714, 719–20 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *Bennett v. New York City Dept. of Corrections,* 705 F.Supp. 979, 984 (S.D.N.Y.1989); *Koster v. Chase Manhattan Bank,* 687 F.Supp. 848, 862 (S.D.N.Y.1988).

The first factor simply requires that the employee belong to a protected group. The plaintiff is a woman, and, therefore, is within the protected class for purposes of claims based on sex discrimination.

■ Second, the employee must be the subject of unwelcome sexual harassment. Although Mr. Yablonski's attempts to engage the plaintiff in conversation may have been unwelcome or even offensive to the plaintiff, we have difficulty seeing how the alleged incidents rise to the level of sexual harassment. To be actionable, the sexual harassment must be so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment. *Meritor Savings Bank,* 477 U.S. at 67, 106 S.Ct. at 2406. "Whether conduct reaches that threshold of severity or pervasiveness is a determination that must be based on the 'totality of the circumstances,' which, as pleaded, must promise more than minor 'isolated incidents' or 'casual comments' that express harassment or hostility." *Watts v. New York City Police Dept.,* 724 F.Supp. 99, 104 (S.D.N.Y. 1989) (quoting *Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986)); *accord Lehtinen v. Bill Communications, Inc.,* No. 88–8257 slip op. 1989 WL 129533 (S.D. N.Y. Oct. 24, 1989) (evaluating whether working environment is poisoned by sexual harassment). Thus, to establish unwelcome sexual harassment, the plaintiff must show that the conduct complained of would have interfered with a reasonable person's work performance and would have seriously affected a reasonable person's emotional well-being.

■ The remarks allegedly made to the plaintiff by Mr. Yablonski appear to have little direct relation to the plaintiff's job at Guiding Eyes. Mr. Yablonski's offending comments included derogatory remarks about a woman with whom the plaintiff was unfamiliar, a challenge to the plaintiff's views on abortion and homosexuality, and a statement regarding sexually transmitted diseases. Sporadic comments like these are nothing more than petty, inappropriate remarks made by someone conducting himself in an improper and unprofessional manner. The plaintiff may not rely on "trivial events and 'sporadic conversation'" to establish pervasiveness. *See Christoforou v. Ryder Truck Rental, Inc.,* 668 F.Supp. 294, 301 (S.D.N.Y.1987). Mr. Yablonski's comments, though uninvited and in poor taste, seem relatively innocuous. We do not condone Mr. Yablonski's purported conduct toward the plaintiff. Harassment, however, does not always follow from the unprofessional conduct of a supervisor. Although we harbor grave doubts about the plaintiff's ability to persuade a jury that Mr. Yablonski's conduct

amounted to sexual harassment, we recognize that issues of fact and credibility pervade this conclusion. Consequently, for the purposes of the plaintiff's prima facie showing, we will assume that the plaintiff has demonstrated unwelcome harassment.

The third factor, however, is no less troublesome. This factor requires that the alleged sexual harassment be based on sex. A showing must be made that but for the fact of her sex, the plaintiff would not have been the object of harassment. *Barnes v. Costle*, 561 F.2d 983, 990 & n. 55 (D.C.Cir. 1977). This criterion is critical to the determination of whether a legitimate claim of sexual harassment has been stated.

The essence of a sexual harassment claim under Title VII is that an employee is intentionally singled out for adverse treatment on the basis of a prohibited criterion, which in this case is sex. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 619–20 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Henson v. Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982). If the acts complained of would be equally offensive to both sexes, then the subject of the harassment cannot claim to have been singled out because of her sex. When the comments creating a sexual harassment claim are not linked in any way to the recipient's gender, there has been no disparate treatment under Title VII. Thus, to prove a sexual harassment claim based on a hostile work environment, the plaintiff must show that she was treated differently than similarly situated persons of the other gender. The plaintiff has made no such showing.

It is difficult to understand how Mr. Yablonski's allegedly calling a man on the golf course a "bitch" can be considered sexual harassment towards either a woman or a man. It is just as difficult to comprehend how senseless comments allegedly made by Mr. Yablonski as to the inappropriateness of men wearing pastel pants constitute harassment based on sex.[4] Further, Mr. Yablonski's statements concerning how he feels about Anita Bryant do not reveal a link between his comments and the plaintiff's status as a woman. Other comments were even less related to one's sex. Mr. Yablonski allegedly asked the plaintiff how she could support the Pope when he has taken certain stands on abortion and homosexuality. Though these comments are surely irrelevant to their work at Guiding Eyes and may demonstrate a certain insensitivity, there is no evidence to suggest that the statements would be more offensive to one sex than to another.

On their face, Mr. Yablonski's comments had little or nothing to do with the plaintiff's gender. Rather, they concerned his opinions on various political, moral and social issues, many of which were linked, though indirectly, to homosexuality. In light of the general slant of his comments, the plaintiff's claim that these comments were sexually harassing strains incredulity. The plaintiff seems to confuse sexual comments with comments based on the recipient's sex. Comments about homosexuality from a man believed to be homosexual directed at a woman contain no direct sexual threat. Comments of a homosexual nature directed at a man, on the other hand, might be considered to be based on sex. In the present scenario, we can make no such conclusion. We find that the plaintiff has failed to prove an element of a prima facie case, namely that the alleged harassment was based on her sex. Consequently, the plaintiff's sexual harassment claim must be dismissed.

■ Having failed to satisfy an element of the prima facie case of sexual harassment, we need not consider the remaining elements. However, even if we were to assume that the plaintiff has made out a prima facie case of sexual harassment, the defendant has satisfied its burden of articulating a legitimate, nondiscriminatory reason for her discharge. The defendant offers ample reasons for having discharged

---

**4.** Indeed, there may be more reason to believe that men, rather than women, would be offended by Mr. Yablonski's comments.

the plaintiff during her six-month probationary period. Several students with whom the plaintiff worked were dissatisfied with plaintiff's job performance and the plaintiff did not get along at times with at least two other employees. Also, Mr. Yablonski criticized the plaintiff for making inappropriate changes to medical forms and improper use of a corporate credit card. Thus, the burden shifts back to the plaintiff to prove that the defendant's stated reasons for termination are pretextual. The plaintiff has offered no such proof. The simple fact that the plaintiff's successor is male does not satisfy the burden of proof. Consequently, even if the plaintiff had presented a prima facie case, the defendant would nonetheless be entitled to summary judgment. In short, the defendant's motion for summary judgment must be granted on the plaintiff's sexual harassment claim.[5]

### V. NEW YORK EXECUTIVE LAW

■ Similarly, the plaintiff's claim under section 296 of the New York Executive Law must be dismissed. The language of the New York statute is almost identical to that contained in Title VII. *Kersul v. Skulls Angels Inc.*, 130 Misc.2d 345, 495 N.Y.S.2d 886, 888 (1985). New York courts require the same standard of proof as that applied to cases brought under Title VII. *See Nicolo v. Citibank New York State,* — Misc.2d ——, 554 N.Y.S.2d 795, 797 (Sup.Ct.1990) (discussing *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405 and other federal case law). For the reasons stated above, the plaintiff's claim under section 296 cannot withstand the burden of proof. Accordingly, the defendant's motion for summary judgment is granted as well on the plaintiff's Executive Law claim.

### VI. CONCLUSION

For all the foregoing reasons, the defendant's motion for summary judgment is granted in its entirety. The Clerk will enter judgment for the defendant.

SO ORDERED.

---

**5.** We note that paragraph 21 of the plaintiff's complaint makes mention of discrimination based on her sex. It does not appear, however, that the plaintiff has asserted a claim distinct from her sexual harassment claim. Indeed, plaintiff's counsel has represented in his memorandum of law that "[c]ause for her termination other than refusal to submit to sexual harassment does not exist." (Plaintiff's Opposition Papers p. 2)