Joan M. WALSH, Plaintiff,

v.

NATIONAL WESTMINSTER BANCORP., INC., and National Westminster Bank, USA, and John Does 1–5, Defendants.

No. 94 Civ. 2414 (JGK).

United States District Court, S.D. New York.

Dec. 15, 1995.

---

Murray Schwartz, Davida Perry, Schwartz & Perry, New York City, for Plaintiff.

Kenneth J. Kelly, Suzanne S. Diviney, Epstein Becker & Green, P.C., New York City, for Defendants.

## OPINION

KOELTL, District Judge: [1]

The Complaint in this action sets forth eight causes of action. The plaintiff, Joan M. Walsh, brings two claims against the defendants, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e: (1) sexual harassment; and (2) retaliation. Each Title VII claim is accompanied by claims brought under the New York State Human Rights Law, Executive Law §§ 296(1)(a, e), 297(9), and the Administrative Code of the City of New York, § 8–107. The Complaint states claims for both negligent and intentional infliction of emotional distress, although the plaintiff has withdrawn the Seventh Cause of Action for Negligent Infliction of Emotional Distress.

NatWest brings this motion for partial summary judgment pursuant to Fed.R.Civ.P. 56(b) seeking the dismissal of the plaintiff's claim for sexual harassment, the state and city claims associated with that claim, and the intentional infliction of emotional distress claim. NatWest alleges that it is entitled to summary judgment on these claims as a matter of law, and that there are no disputed genuine issues of material fact that require resolution. In support of its motion, Nat-

West argues that summary judgment should be granted in its favor for the following reasons: *First,* the plaintiff cannot establish a prima facie case of sexual harassment. The plaintiff's claim for "sexual harassment" against NatWest is a claim based on "hostile environment" rather than "quid pro quo". *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304–05 (2d Cir.1995) (citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64–65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986)). Neither the Complaint, nor any of the plaintiff's pleadings allege a theory of quid pro quo sexual harassment with the exception of the Opposition papers submitted for this motion. (*See* Mem.Opp'n at 4 n. 3.) As the defendant points out in its reply brief, the plaintiff explicitly denied that she claims quid pro quo sexual harassment in her Responsive 3(g) Statement. (*See* Mem.Reply at 7.). *Second,* alternatively, the Court lacks jurisdiction to consider the plaintiff's sexual harassment claim because she did not include this allegation in her EEOC charge. *Third,* in the event the Title VII claim for sexual harassment is disposed of, the Court should decline supplemental jurisdiction over the state and city claims in light of the unsettled questions of state and local law that predominate in those claims. *And fourth,* the plaintiff has failed to allege facts sufficient to support her claim for intentional infliction of emotional distress.

### I.

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). In determining whether sum-

---

**1.** This opinion was delivered from the bench on December 15, 1995.

mary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

As the Court of Appeals recently reiterated in reversing a grant of summary judgment dismissing a pregnancy discrimination case:

> The district court's function is to decide whether any factual issues exist that would warrant a trial, not to resolve them in favor of either party.

*Quaratino v. Tiffany & Co.*, 71 F.3d 58, 65 (2d Cir.1995) (quoting *Gallo*, 22 F.3d at 1224).

## II.

NatWest argues that it is entitled to summary judgment on Walsh's claim for sexual harassment because the plaintiff is unable to establish a prima facie case. First, NatWest contends that the Court does not have jurisdiction over this claim because no claim for sexual harassment was included in the charge Walsh filed with the EEOC and that, therefore, Walsh has not yet exhausted her administrative remedies. While the requirement is not jurisdictional, *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 392–98, 102 S.Ct. 1127, 1131–35, 71 L.Ed.2d 234 (1982), the exhaustion requirement is an essential part of Title VII's statutory scheme that must be observed. *See Butts v. City of New York Dep't of Housing Preservation and Development*, 990 F.2d 1397, 1401 (2d Cir.1993). Second, NatWest argues that, even if the Court has jurisdiction, Walsh cannot establish NatWest's liability because NatWest took prompt and adequate remedial action by firing the person about whom Walsh complained.

### A.

In Title VII cases, the district courts have jurisdiction only over those claims either included in an EEOC charge or that are "reasonably related" to the allegations in plaintiff's EEOC complaint. *Butts*, 990 F.2d at 1401. "This exhaustion element is an essential element of Title VII's statutory scheme," which encourages parties to settle disputes through conciliation and voluntary compliance. *Id.*

In *Butts*, the Court of Appeals noted that it has recognized three circumstances that satisfy the reasonable relationship test: (1) "loose pleadings," such that the Court must take into account the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) claims for retaliation for filing a timely EEOC charge; and (3) "incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1402–03.

In this case, NatWest argues that the EEOC charge filed by Walsh is limited to her claims of retaliation for her earlier complaint about Martin Feuer. NatWest asserts that the EEOC charge merely refers to the sexual harassment complaint as the source of the retaliation about which Walsh complains. In contrast, NatWest argues, the charge contains an orderly recitation of alleged retaliatory actions. Further, NatWest notes that the box indicating "Retaliation" is marked, and the one for "Sex" is not. NatWest also refers to the affidavit sworn by the plaintiff in support of her EEOC charge, arguing that the affidavit is also directed at retaliatory conduct and lacks any allegation of sexual harassment. Most significantly, NatWest argues, both the affidavit and the EEOC charge contain a statement by Walsh that her complaint of sexual harassment was "resolved to my satisfaction."

Walsh responds that her statement that the matter had been satisfactorily resolved is not a proper waiver or release, or if it is, that such a release raises questions of fact with respect to whether Walsh voluntarily and knowingly released NatWest from liability

for its employee's acts of harassment. Walsh further argues that there are unresolved issues of fact with respect to the meaning of the unmarked box on the form. She maintains that the form was completed by an EEOC officer and that a question of fact therefore exists as to whether Walsh intended the EEOC charge to include the incidents of sexual harassment. Finally, Walsh argues that the claim of sexual harassment against NatWest is reasonably related to the charge of retaliation, and an investigation of the incidents of sexual harassment would be reasonably expected to grow out of the investigation of Walsh's complaints of retaliation.

The questions of fact raised by the plaintiff are misdirected. Whether the plaintiff's claim for sexual harassment is reasonably related to the claims of retaliation specified in the EEOC charge does not depend on Walsh's intent or her understanding of the effect of her complaint on a later lawsuit. The relevant inquiry is whether the EEOC could reasonably be expected to investigate the sexual harassment claims based on the allegations contained in the charge. Even after considering the language in the EEOC charge as liberally as possible, it is not reasonable to conclude that it would prompt an investigation of the plaintiff's earlier complaints about Feuer. First, by its terms, the charge relates directly and specifically to retaliation taken in response to Walsh's complaints about Feuer after Feuer was fired. The details underlying those complaints are not directly related to the question of whether NatWest retaliated against Walsh for asserting them. Second, the sexual harassment claim is an entirely distinct theory of liability predicated on acts related to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature. See Babcock v. Frank, 783 F.Supp. 800, 808 (S.D.N.Y.1992) (Sweet, J.); Fair v. Guiding Eyes for the Blind, Inc., 742 F.Supp. 151, 154 (S.D.N.Y.1990) (Goettel, J.). Apart from the references to the earlier complaint Walsh made, neither the EEOC charge nor its supporting affidavit mention conduct related to sex in any way. Indeed, the charge very specifically identifies retaliatory actions such as being given an unfair performance review, not being allowed to take business development trips, having responsibilities taken away, and being denied a salary increase when due. These actions are distinct from the incidents of harassment both in time and with respect to the people in the company alleged to have so acted. Moreover, the retaliatory conduct lacks any sexual dimension, and, in light of the fact that the box for "sex discrimination" was left unmarked, are difficult to construe as such. Finally, the fact that both the charge and the affidavit indicate that the earlier complaint was resolved satisfactorily serves to foreclose even a speculative inquiry into the substance of the earlier harassment. Where the complaining party expressly states that an incident of sexual harassment was resolved satisfactorily, it is not reasonable to believe that an EEOC investigation would be conducted into the substance of the incident. *Compare Williams v. Little Rock Municipal Water Works*, 21 F.3d 218, 222–23 (8th Cir.1994) (no mention of race discrimination in EEOC charge for retaliation; "retaliation" box marked, "race" box empty; holding complaint of race discrimination not reasonably related to EEOC charge of retaliatory failure to promote); *Lee v. The Kroger Co.*, 901 F.Supp. 1218, 1224 (S.D.Tex.1995) (retaliation charge mentions earlier Title VII claims; "retaliation" box marked, "race" box empty; cites and follows holding in *Williams*); *see also Pitchford v. Kitchens*, 873 F.Supp. 167, 170–72 (E.D.Ark.1994) (granting summary judgment for racial discrimination claims not mentioned in EEOC charge for reprisals in retaliation for the earlier EEOC filings, citing *Williams* with approval). Accordingly, the plaintiff has not exhausted her administrative remedies with respect to the sexual harassment claim against NatWest, and the defendant's motion for summary judgment dismissing that claim must be granted.

### B.

Additionally, NatWest argues that Walsh's sexual harassment claim should be dismissed in any event because she cannot prove that NatWest failed to take steps to remedy the harassment. This argument is persuasive and is an alternative basis for granting NatWest's motion.

■ For an employer to be held vicariously liable for hostile environment sexual harassment of its employee, the plaintiff must establish that the employer "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Kotcher v. Rosa and Sullivan Appliance Center*, 957 F.2d 59, 63 (2d Cir. 1992); *Snell v. Suffolk County*, 782 F.2d 1094, 1104 (2d Cir.1986); *Babcock*, 783 F.Supp. at 808; *Fair*, 742 F.Supp. at 154. NatWest argues that the steps it took when Walsh first complained about Feuer's conduct, namely investigating the complaint and terminating Feuer within the week, were swift, consistent with the company's personnel policies, and entirely appropriate under the circumstances. Walsh contends that NatWest acted hastily and without proper regard for the potential for retaliation, and, at the very least, whether NatWest took appropriate remedial action is a question of fact. In fact, Walsh argues that NatWest was *too responsive*, and maintains that by dismissing Feuer without taking steps to ensure against subsequent retaliation, NatWest did not respond appropriately.

The plaintiff is correct that, as a general proposition, whether an employer has taken prompt remedial action may present questions of fact. In some cases, an employer takes decisive action but only after repeated complaints, thus raising a question of fact as to whether the employer knew or should have known about the harassment and failed to undertake a proper investigation. *See, e.g., Watts v. New York City Police Dep't*, 724 F.Supp. 99, 107 (S.D.N.Y.1989) (Sweet, J.). In other cases an employer takes action that itself is open to debate about its adequacy or effectiveness in addressing the harassment, such as transferring the complaining party temporarily or merely reprimanding an offender for particularly grievous conduct. *See, e.g., Bennett v. New York City Dep't of Corrections*, 705 F.Supp. 979, 987–88 (S.D.N.Y.1989) (Mukasey, J.). In the present case, however, it is undisputed that NatWest promptly investigated the plaintiff's first complaint about Feuer's behavior and six days later took decisive action to stop the offensive behavior—Feuer was fired. Walsh does not dispute that this remedial action

prevented Feuer from harassing her further, nor does Walsh contend that NatWest should have investigated or terminated him earlier. Under these circumstances, and after resolving all ambiguities and drawing all inferences in her favor, Walsh cannot establish that NatWest failed to take appropriate remedial action, and, therefore, cannot make out a prima facie case of sexual harassment against Feuer's employer. The plaintiff's argument that NatWest failed to ensure against retaliation connected to complaints about Feuer is properly directed to her claim of retaliation, a claim for which NatWest does not seek summary judgment.

Accordingly, the defendant's motion for summary judgment dismissing the plaintiff's claim for sexual harassment under Title VII is granted.

## C.

■ Having dismissed the Title VII claim for sexual harassment, the Court now considers whether to exercise supplemental jurisdiction over the associated state and local claims, pursuant to 28 U.S.C. § 1367(c). NatWest urges the Court to decline jurisdiction because New York law is unclear with respect to sexual harassment vicarious liability for employers who take prompt and appropriate remedial action in response to hostile work environment complaints. Walsh responds by arguing that the Court still has jurisdiction over her Title VII retaliation claim, and that supplemental jurisdiction is still appropriate where a federal claim remains.

The plaintiff is correct that § 1367(a) permits the Court to exercise supplemental jurisdiction where even one federal claim remains. And, she is also correct that the law does not require the Court to decline jurisdiction in such a case. Nevertheless, it does appear that New York law is unsettled with respect to the question of whether NatWest's remedial action would insulate it from vicarious liability, either under the New York State Human Rights Law or the Administrative Code of the City of New York. Although New York courts consider jurisprudence under Title VII to be "instructive"

with respect to claims under state and local law, *see, e.g., Rudow v. New York City Comm'n of Human Rights,* 123 Misc.2d 709, 474 N.Y.S.2d 1005, 1009 n. 7 (Sup.Ct.N.Y.Co. 1984), *aff'd mem.,* 109 A.D.2d 1111, 487 N.Y.S.2d 453 (1st Dep't), *appeal denied,* 66 N.Y.2d 605, 499 N.Y.S.2d 1025, 489 N.E.2d 1302 (1985), neither party has cited any New York cases on this issue. Section 1367(c)(1) specifically provides that a district court may decline supplemental jurisdiction where "the claim raises a novel or complex issue of State law." In fact, it may be an abuse of discretion not to do so, at least where the federal claim has been dismissed. *See Morse v. Univ. of Vermont,* 973 F.2d 122, 127–28 (2d Cir.1992). Certainly, if I were to interpret New York law, I would be guided by the Federal law that New York courts look to as instructive, and pursuant to which I have dismissed the plaintiff's claim of sexual harassment. But the defendant urges me not to reach that issue because it is unsettled under New York law, and the New York courts should be given the opportunity to decide it in the first instance in view of the fact that the facts of that claim are not being considered as a federal claim. Accordingly, I decline to exercise supplemental jurisdiction over the plaintiff's Second and Third causes of action under the New York State Human Rights Law and the Administrative Code of the City of New York, and those claims are dismissed without prejudice.

### III.

With respect to the defendant's motion for summary judgment dismissing the plaintiff's Eighth cause of action for intentional infliction of emotional distress, NatWest argues that the plaintiff has not set forth allegations of sufficient harshness to state a claim for intentional infliction of emotional distress. The plaintiff asserts that she has suffered vicious, extreme, and outrageous treatment actionable under New York law.

In *Fischer v. Maloney,* 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978), the New York Court of Appeals accepted the elements of the tort as set out in the Restatement of Torts, Second: "One who by extreme and outrageous conduct intentionally or reck-lessly causes severe emotional distress to another is subject to liability for such emotional distress." *Id.,* 43 N.Y.2d at 557, 402 N.Y.S.2d at 992–93, 373 N.E.2d at 1217 (quoting Restatement (Second) of Torts § 46(1)). The Court of Appeals continued, stating that: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46(1) cmt. d).

To survive a motion for summary judgment, the plaintiff's allegations must satisfy the rule set out in the Restatement and adopted by the Court of Appeals in *Fischer.* The facts alleged by Walsh regarding the manner of her treatment following her complaint about Feuer and the events leading up to her termination fall short of this exacting standard. Walsh asserts that NatWest's alleged retaliatory actions were devastating to her personally. She alleges she was subjected to humiliating criticism and adverse performance reviews. She claims she was not allowed to travel and had her responsibilities taken away from her. But these assertions do not establish the actions she alleges were extreme or outrageous in an objective sense.

The circumstances in recent cases cited by the plaintiff where a claim for intentional infliction of emotional distress survived summary judgment, are far more egregious than those described in this case. *See Hughes v. Patrolmen's Benevolent Ass'n,* 850 F.2d 876 (2d Cir.) (fellow officers blamed plaintiff for another officer's suicide and conducted vendetta against him), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *Polley v. Federal Reserve Bank of New York,* 1994 WL 465923 (S.D.N.Y. Aug. 23, 1994) (long-term pattern of race discrimination, given biased performance reviews, consistently lower raises, passed over for promotions, given menial work and berated by supervisor); *Zaffino v. Surles,* 1995 WL 146207 (S.D.N.Y. Mar. 31, 1995) (after suffering broken leg slipping on ice in company parking lot, plaintiff returned to work on crutches and was "locked out of his office, shunted to a filthy,

cluttered storage room, stripped of all executive responsibilities, relegated to menial tasks, deprived of elevator keys and mail keys, deprived of a parking space adjacent to the facility, removed from executive meetings and required to report to a person in a subordinate civil service rank."); *O'Reilly v. Executone of Albany, Inc.*, 121 A.D.2d 772, 503 N.Y.S.2d 185 (3d Dep't 1986) (plaintiff subjected to physical sexual contact, sexual jokes, pornography and erotica); *Collins v. Willcox, Inc.*, 158 Misc.2d 54, 600 N.Y.S.2d 884 (Sup.Ct.N.Y.Co.1992) (plaintiff suffered repeated sexual physical touching and advances). Thus, drawing all reasonable inferences in favor of the plaintiff and resolving all ambiguities against the defendant, the plaintiff has failed to allege extreme and outrageous behavior by NatWest, and, thus, has failed to state a claim under *Fischer.*

In contrast, recent decisions in both federal and state courts interpreting New York law illustrate the very high and exacting standard that must be satisfied to establish extreme and outrageous behavior. In *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983), the New York Court of Appeals upheld the dismissal of an action for intentional infliction of emotional distress despite allegations by the plaintiff that he was transferred and demoted for reporting fraud at his company, told that he could not be fired because of his age but that he would never advance, discharged and ordered to leave immediately, forcibly and publicly escorted from the building by guards when he returned the next day to pick up his belongings, and ordered out of the building two weeks later when he came back, as instructed, to pick up his possessions, which were then dumped in the street. *See Murphy v. American Home Products Corp.*, 112 Misc.2d 507, 508–09, 447 N.Y.S.2d 218, 219–20 (Sup.Ct.N.Y.Co.1982). In affirming the dismissal, the Court of Appeals stated that the allegations fell "far short" of the standards for an intentional infliction of emotional distress claim. *Murphy*, 58 N.Y.2d at 303, 461 N.Y.S.2d at 236, 448 N.E.2d at 90. In addition, the Court ruled that because there is no cause of action in tort in New York for abusive or wrongful discharge of an at-will employee, plaintiffs should not be allowed to circumvent that conclusion or to subvert the traditional at-will contract rule by casting their causes of action in terms of a tort of intentional infliction of emotional distress. *Id.*

Furthermore, recent decisions from the Court of Appeals for the Second Circuit have reaffirmed the limited nature of the tort of intentional infliction of emotional distress. In *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1158 (2d Cir.1993), the Court of Appeals affirmed summary judgment for the defendants despite allegations by the plaintiff of a pattern of harassment and intimidation by his supervisors lasting two years and resulting in severe stress-related health problems. The plaintiff alleged that his supervisors threatened him with termination on several occasions, mocked him because of his age, and ridiculed him as a result of his stress-related ailments. The plaintiff claimed that his supervisor "told me that he was indirectly responsible for the termination of several thousand people and ... that he personally terminated 2–or 300 people and that when it came to terminating me, he would do that, too." *Id.*, 995 F.2d at 1151. In addition, when the plaintiff informed the supervisor of his stress-related medical ailments and told him that the ailments were a result of the supervisor's threats, the supervisor replied "good, that's what I intended, I wanted you to get the message, that's good." *Id.*, 995 F.2d at 1152.

While plaintiff's supervisors were demoted and disciplined by the company for their intimidatory methods, the Court nevertheless found that the "[d]efendants' criticisms of [the plaintiff's] job performance and their conditional threats of termination ... fall far short of the 'extreme' and 'outrageous' conduct that is actionable as an intentional infliction of emotional distress." *Id.*, 995 F.2d at 1158. In addition, the Court reaffirmed the *Murphy* court's admonition against plaintiffs' evading the at-will contract rule by casting causes of action as intentional infliction of emotional distress claims. *Id.*, 995 F.2d at 1158 (citing *Murphy*, 58 N.Y.2d at 303, 461 N.Y.S.2d at 236, 448 N.E.2d at 90).

In *Martin v. Citibank, N.A.*, 762 F.2d 212 (2d Cir.1985), the Court of Appeals for the Second Circuit relied on *Murphy* in reversing a decision not to grant judgment notwithstanding the verdict. The plaintiff in *Martin* brought an action against her employer for discrimination in employment and intentional infliction of emotional distress. The action stemmed from Citibank's selection of six minority employees for polygraphing during an investigation of missing funds at the bank. The bank tested only seven employees, of which five were black, one was Hispanic, and one was white, despite a larger number of employees who could have handled the disputed funds. Despite being exonerated through the testing, the plaintiff, who was black, was upset that six out of the seven tested were minorities. Subsequently, the plaintiff requested and received a transfer to another branch. At the new branch, the plaintiff complained of harassment as a result of the polygraphing. After four weeks, the plaintiff resigned. Using *Murphy* as a basis, the Court found that the allegations in question did not meet the standards for an intentional infliction of emotional distress claim. *Martin*, 762 F.2d at 220. *See also Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir.1995) (affirming dismissal of claim for intentional infliction of emotional distress based on allegations defendants had made up their accounts of plaintiff's alleged misconduct to induce the plaintiff's employer to fire him; allegations did not allege conduct going "beyond all possible bounds of decency").

In this case, after drawing all reasonable inferences in favor of the plaintiff and resolving all ambiguities against the defendant, and when compared to the circumstances under which both New York and federal courts have considered the claim, the plaintiff has failed to allege extreme and outrageous behavior by NatWest sufficient to support her cause of action for intentional infliction of emotional distress under *Fischer*. Accordingly, because the plaintiff's allegations do not satisfy the standard required for a claim for intentional infliction of emotional distress under New York law, the defendant's motion for summary judgment dismissing the plaintiff's Eighth cause of action is granted. Because I find that the plaintiff has not stated a claim for intentional infliction of emotional distress as a matter of law, I do not reach the question of whether any of the plaintiff's claims would be time-barred under New York's one-year statute of limitations for such claims. *See* N.Y.Civ.Prac.L. & R. § 215.

## CONCLUSION

For the reasons I have stated, the defendant's motion for partial summary judgment is granted with respect to the plaintiff's First, Second, Third, and Eighth causes of action.