Lucella C. MORALES, Plaintiff,

v.

Norman Y. MINETA, et al., Defendants.

No. CIV. 01–2141(SEC).

United States District Court, D. Puerto Rico.

Sept. 10, 2002.

Luis M. Chavez–Ghigliotty, Cabo Rojo, P.R., for plaintiff.

Camille L. Vélez–Rive, AUSA, U.S. Attorney's Office, San Juan, P.R., for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is Norman Mineta, Secretary of the United States Department of Transportation, the United States Department of Transportation, and the United States Coast Guard's ("Defendants") motion for partial summary judgment. (Docket # 11). Lucella C. Morales ("Plaintiff") has filed an opposition to Defendants' motion (Docket # 16), and Defendants have replied (Docket # 19). After careful review of the arguments of counsel, the relevant law, and the record, the Court finds that Defendants' motion should be **GRANTED.**

## Background

Plaintiff Lucella C. Morales filed suit before the Court alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff claims that she was the subject of national origin, race, and retaliatory discrimination while working as a civilian employee at the United States Coast Guard Air Station Borinquen in the "Non–Appropriated Fund Activity Morale, Wellbeing and Recreation Office." Plaintiff is a Puerto Rican, Hispanic female. Plaintiff seeks, among other remedies, compensatory damages in the amount of $300,000 for the alleged race and national origin discrimination, and $300,000 for the alleged retaliatory discrimination. (Docket # 1).

Defendants have filed a motion for summary judgment, seeking partial dismissal of Plaintiff's complaint, arguing that Plaintiff failed to adequately exhaust administrative remedies under Title VII because Plaintiff failed to file an Equal Employment Opportunity Commission ("EEOC") complaint regarding the claims of race and national origin discrimination. In addition, Defendants claim that Norman Y. Mineta, Secretary of the United States Department of Transportation, is the only proper Defendant in this claim of discrimination in federal employment. **(Docket # 11, 19).** Plaintiff, on the other hand, claims that she properly filed an administrative complaint for race and national origin discrimination before the EEOC, and thus her claims based on those theories of discrimination should survive Defendants' motion for partial summary judgment. **(Docket # 16).**

The following factual summary is critical to our analysis. Plaintiff, who is a Puerto Rican, (non-white) Hispanic female, commenced her term as a civilian employee with the United States Coast Guard in 1996 as a "Recreational Assistant" in the Morale, Well-being and Recreation Office ("MWR"). Her term continued, apparently without incident, until 1999, when the MWR Office sought to convert three civilian positions to General Schedule positions. Plaintiff did not disagree with the conversion, per se, however, she believed that certain individuals were preselected or preordained to receive the conversions to the more favorable General Schedule scale, and that she was not provided an opportunity to receive the conversion. Plaintiff believed that she was deprived of this opportunity based on her race and/or national origin.

Unsatisfied with the process, Plaintiff filed an informal complaint with the EEOC in November of 1999. **(Docket # 16, ex. A).** This charge was based on race and national origin discrimination. In late December of 1999, Plaintiff and the United States Coast Guard reached an "EEO Informal Inquiry Settlement Agreement," whereby the complained of conversion/promotion/pre-selection complaint was rescinded. **(Docket # 16, ex. C).** Pursuant to the agreement, the parties agreed that all prospective GS positions in the MWR Office would be advertised competitively. It was further agreed that no reprisals would be taken against Plaintiff based on her filing of the complaint. Finally, the parties agreed that if the Coast Guard rescinded or failed to carry out the terms of the resolution, that Plaintiff could have her "complaint reinstated for further processing by filing a written request to that effect with the U.S. Coast Guard, Civil Rights, 2100 S.W. Washington, D.C., 20593, within 30 days of the CG's noncompliance with the Agreement."

Plaintiff claims that immediately after the resolution of the informal EEO informal charge, she began to be treated differently. For example, Plaintiff claims that her performance evaluations, which had been excellent before the filing, began to drop. Based on these "environmental" changes after the filing of the informal complaint, on May 8, 2000, Plaintiff filed another informal charge of employment discrimination. **(Docket # 16, ex. E).** In this complaint to the EEOC, Plaintiff alleged discrimination on the basis of reprisal "from prior EEO complaint and unsatisfactory performance appraisal." Approximately one month later, on June 14, 2000, Plaintiff filed her first, formal complaint alleging "reprisal for prior EEO informal complaint." **(Docket # 11, ex. 2).** In the June of 2000 formal complaint, Plaintiff stated:

> I am initiating this formal EEO complaint because there has been reprisal for the first informal EEO complaint I submitted to this command on 13 Nov.

99. My office was converting three Non–Appropriated Fund (NAF) positions to GS positions and that three MWR employees had been handpicked instead of the positions being announced competitively. When these events took place, I had the longest tenure in the office and was the only employee with career civil service status.

(*Id.*). On September 11, 2000, Plaintiff requested that her formal complaint be amended to include the "Performance Improvement Plan (PIP)" and documentation, as part of the retaliation issue. (Docket # 11, ex. 4). On January 16, 2001, five days after she was dismissed from her employment, Plaintiff amended the complaint to include her "Notice of Removal from Employment." **(Docket # 11, ex. 5).** On August 24, 2001, Plaintiff commenced this suit.

**Summary Judgment Standard**

Fed.R.Civ.P. 56(a) provides that: "A party seeking to recover upon a claim . . . may . . . move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted by him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martinez v. Colón,* 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, not room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the

non-moving party. *Casas Office Machines,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case", *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form' sufficient to limn a trialworthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz,* 896 F.2d at 8, (*quoting Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

**Applicable Law/Analysis**

Before commencing a civil action under Title VII a Plaintiff must first exhaust administrative remedies. *See Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Suits involving plaintiffs employed by the federal government are subject to the provisions of 42 U.S.C. § 2000e–16. Subsection (a) of Section 2000e–16 provides that "[a]ll personnel actions affecting employees or applicants for [federal] employment ... shall be made free from any discrimination based on race, color, religion, sex, or national origin." *Id.* Subsection (b) grants the Equal Employment Opportunity Commission the authority to enforce Subsection (a), and provides the commission with the authority to issue rules, regulations and orders to carry out its responsibilities. *Id.* Subsection (c) provides the procedural framework for the filing of administrative and judicial complaints, by providing that:

> [w]ithin 90 days of receipt of notice of final action taken by department, agency, or unit referred to in Subsection (a) of this Section, or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this Section ... or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by a final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, **in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.**[1]

*Id.*

As the statute indicates, the filing of a proper administrative charge before the

---

1. Based on this language, Defendant is correct that Norman Y. Mineta, Secretary of Transportation, is the correct Defendant for Plaintiff's Title VII claim. As such, Plaintiff's Title VII claims against the United States Department of Transportation and the United States Coast Guard are **dismissed.**

EEOC is a prerequisite before the commencement of a suit under Title VII. *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996). The purpose of such a requirement is to "afford formal notice to the employer and prospective defendant of the charges that have been made against it." *White v. New Hampshire Dept. of Corrections*, 221 F.3d 254, 263 (1st Cir. 2000) (*citing Powers v. Grinnell Corp.*, 915 F.2d 34, 37 (1st Cir.1990)). Therefore, "[t]he scope of the civil complaint is accordingly limited to the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." *Id.* The First Circuit Court of Appeals has elaborated on this standard by holding:

> [a]n administrative charge is not a blueprint for the litigation to follow ... [and] the exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow.... Rather, the critical question is whether the claims set forth in the civil complaint come within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*White*, 221 F.3d at 263, *citing Powers*, 915 F.2d at 38 (internal citations and quotation marks omitted).

With this framework in mind, we now determine which of Plaintiff's discrimination allegations we may properly consider. Defendants argue that the only EEOC investigation that fulfills the administrative prerequisite is Plaintiff's allegations of reprisal or retaliation concerning (1) the April 6, 2000 performance rating, (2) the performance improvement plan, and (3) the notice of removal from employment. Defendants assert that the reference to the 1999 informal EEOC complaint, concerning race and national origin discrimination, only serves to demonstrate the source of the retaliation about which Plaintiff complains. Defendants also point out

that the narrative section of the June of 2000 formal complaint set out an orderly recitation of only the alleged retaliatory actions, and further, that only the box indicating "Reprisal" is marked on the June of 2000 formal complaint. On the other hand, Plaintiff argues that the 1999 claims of race and national origin discrimination are reasonably related to the 2000 retaliation charge. Moreover, Plaintiff claims that the formal complaint incorporated by reference the 1999 informal charge of race and national origin discrimination.

The relevant inquiry for our purposes is: whether the EEOC could reasonably be expected to investigate the race and national origin discrimination claims based on the allegations contained in the formal complaint filed in June of 2000 and amended in September of 2000 and January of 2001. Even considering Plaintiff's 2000 filing in a liberal fashion, the Court concludes that the race and national origin discrimination claims are not reasonably within the scope of the investigation. We will explain.

First, by its very terms, the charge claims only retaliation. Plaintiff did not check the race or national origin box on the formal complaint, nor did she provide factual guidance to the EEOC regarding specific incidents of either race or national origin discrimination occurring after the settlement of her 1999 complaint, which would indicate a need to investigate race or national origin discrimination.

Second, as the Government points out, retaliation or reprisal, and substantive discrimination based on race and national origin are distinct legal theories. In order to prove retaliation, Plaintiff must prove that she was the subject of discrimination after participation in a protected activity under Title VII. Here, Plaintiff would have to prove that she was discriminated against

by her employer after she filed the 1999 informal complaint with the EEOC. Plaintiff would not be required to prove that the 1999 charges of substantive race and national origin discrimination were meritorious. The fact that the complaint was lodged, and that Plaintiff was the target of illegal discrimination because of its filing, would satisfy her burden. On the other hand, in proving a substantive race and national origin discrimination, Plaintiff would necessarily have to prove that her employer took illegal employment actions against her, based on her race and/or national origin. Due to the differences in these theories, it is critical that an EEOC investigator is aware of exactly the type of discrimination being investigated, because the scope of investigation is necessarily predicated upon the type of allegations Plaintiff makes.

Third, the Court finds that the EEOC investigator clearly indicated to Plaintiff the type of investigation being conducted. On July 26, 2000, Plaintiff received a letter concerning her June 27, 2000 discrimination complaint. In that letter, the EEOC investigator informed Plaintiff as follows:

> [b]ased on a thorough review of your complaint, the EEO counselor's report, and related documents, the following claim has been accepted for investigation:
>
> Were you subjected to reprisal (previous EEO complaint) when you received Below Satisfactory performance rating on April 6, 2000 from your supervisor Linda Lempp?
>
> Any request for correction to the claim as stated must be submitted in writing to this office within five calendar days of your receipt of this letter. If you do not respond within the five day period, it will be assumed that the issue is correctly stated.

(**Docket #11, ex. 3**). This letter clearly indicates the intended scope of the EEOC's investigation. Plaintiff was provided with a means to correct this characterization of the complaint, however, the record does not reflect that Plaintiff acted on such opportunity.

Fourth, the Court finds that Plaintiff understood that the scope of the 2000 investigation covered the alleged reprisal. First, Plaintiff's June of 2000 complaint states that "I am initiating this formal EEO complaint because there has been reprisal for the first informal EEO complaint I submitted to this command on 13 Nov. 99." (**Docket #11, ex. 2**). Moreover, when Plaintiff requested permission to amend the complaint, she wrote "I am requesting that my formal complaint be amended to include the Performance Improvement Plan (PIP) and documentation, as part of the retaliation issue." (**Docket #11, ex. 4**). Finally, Plaintiff wrote the EEOC to amend the complaint in January of 2001, and stated that the dismissal was "... based on reprisal from prior EEO informal and formal complaints." (**Docket #11, ex. 5**).

Finally, the Court finds Plaintiff's argument that the 1999 informal complaint was incorporated by reference into the June of 2000 formal complaint to be unpersuasive. The Court does not dispute that the EEOC investigator was aware of and had access to the 1999 claim of race and national origin discrimination. However, the investigator also had access to and was aware of the fact that the 1999 informal complaint was resolved by the parties through an "EEO Informal Inquiry Settlement Agreement." In this agreement, Plaintiff assented to the following pertinent terms:

> A. The MWR management staff sought to convert three civilian NAF positions to GS positions, with certain employees pre-named to fill them.... No discrimination against

employees was intended on the part of any member of the MWR management staff. This Command has always been, and remains fully committed to the Coast Guard Equal Opportunity Program.

B. All prospective GS positions in the MWR Officer at USCG Air Station Borinquen will be advertised competitively....

C. No undue reprisals shall be taken against you on the part of supervisors in the chain of command or coworkers.

D. The aggrievant agrees to not institute (and/or withdraw any pending) formal EEO complaint, claim, appeal, grievance or lawsuit, relating to any facts or disputes that are the subject of this settlement agreement, against the United States Coast Guard (CG) or any CG employees. The aggrievant agrees and understands that this Agreement and its contents are confidential and not for communication, display disclosure or publication without the written consent of both the CG and the aggrievant. This Agreement may be used as evidence in a later proceeding in which either the CG or the aggrievant allege a breach of the terms of resolution cited in this Agreement. If the CG rescinds or fails to carry out any of the terms of the resolution cited in the above for any reasons not attributable to the aggrievant's acts of conduct or performance, the aggrievant may have his/her complaint reinstated for further processing by filing a written request to the effect with the U.S. Coast Guard, Civil Rights, 2100 Second Street, S.W., Washington, D.C., 20593 within 30 days of the CG's noncompliance with the Agreement.

(Docket # 11, ex. 1).

The terms of this Agreement are quite explicit on the purpose and scope of the parties' settlement. First, Plaintiff agreed that all of the complaints or grievances were withdrawn. The significance of this fact is that as soon as the parties signed the stipulation, Plaintiff had no claims pending before the EEOC. Second, the terms clearly indicate that Plaintiff had two options should she believe that the Coast Guard had breached the Agreement. One option was to sue for the breach of the Agreement. This required Plaintiff to file a written request with the Coast Guard's Civil Rights Office within 30 days of the alleged non-compliance. The other option at Plaintiff's disposal was to request that the same office, or the EEOC, reinstate her prior complaint based on race and national origin discrimination, again within 30 days of the alleged non-compliance. Since the record does not reflect that Plaintiff followed the procedural prerequisite for the reinstatement of her prior claim, we may not review its merits at this point. *See Rivera v. Dalton,* 77 F.Supp.2d 220 (D.P.R.1999). The Court believes that for these reasons, Plaintiff's allegations of race and national origin discrimination were outside the actual scope of the EEOC's formal investigation, and that it would not have been reasonable for the EEOC investigation to consider the substantive aspects of Plaintiff's prior complaint for race and national origin discrimination during the retaliation investigation.

Moreover, the facts here are similar to the Eighth Circuit Court of Appeals decision of *Williams v. Little Rock Municipal Water Works,* 21 F.3d 218 (8th Cir. 1994). In *Williams,* an African American employee filed suit against her municipal employer alleging race discrimina-

tion and retaliation. Defendant moved for partial summary judgment alleging that plaintiff had not exhausted administrative remedies with regard to the racial discrimination claim. The court agreed with defendant and held that the racial discrimination claim was not before the court because the plaintiff: (1) did not allege any facts in the narrative section of the charge that would raise an issue of race discrimination, (2) did not raise the race issue in the affidavit in support of the charge, (3) checked only the "retaliation" box on the EEOC questionnaire, and (4) the EEOC only investigated the retaliation claim. *Id.* at 222–23. *See also Walsh v. National Westminster Bancorp.,* 921 F.Supp. 168, 171–172 (S.D.N.Y.1995); *Lee v. Kroger Co.,* 901 F.Supp. 1218, 1223–23 (S.D.Tex.1995); *Pitchford v. Kitchens,* 873 F.Supp. 167, 170–71 (E.D.Ark.1994). We find that this case is virtually indistinguishable from *Williams,* and will, therefore, follow the precedent.

### Conclusion

For the reasons set forth above, Defendant's partial motion for summary judgment **(Docket #11)** **is GRANTED.** Plaintiff's Title VII claims of race and national origin discrimination are **dismissed.** Only Plaintiff's Title VII claim of retaliation remains pending against Defendant Mineta, the Secretary of the United States Department of Transportation.

**SO ORDERED.**