Charlina **WILLIAMS**, Plaintiff,

v.

**R.H. DONNELLEY INC.**, Defendant.

No. 01CIV0107(WCC).

United States District Court,
S.D. New York.

May 6, 2002.

Law Offices of Leonard Buddington, Jr. (Leonard Buddington, Jr., Esq., Of Counsel), Yonkers, NY, for Plaintiff.

Jones, Day, Reavis & Pogue (Amy E. Dias, Esq., James S. Urban, Esq., Of Counsel), Pittsburgh, PA, Jones, Day, Reavis & Pogue (Thomas E. Lynch, Esq., Of Counsel), New York City, for Defendant.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Charlina Williams brings the instant action against defendant R.H. Donnelley, Corp. ("Donnelley"), pursuant to Title VII of the Federal Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), alleging that she was subjected to improper race and gender discrimination. Defendant now moves for summary judgment pursuant to FED. R. CIV. P. 56(b). For the reasons set forth below, defendant's motion is granted.

### BACKGROUND

The following facts are undisputed unless otherwise indicated.[1] Donnelley is in the business, *inter alia*, of publishing clas-

---

1. Defendant submitted a statement of material facts pursuant to Local Civil Rule 56.1, which provides:
   (a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.…
   (b) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material

sified telephone directories. Plaintiff, an African–American female, was hired by defendant in May 1996 as an entry-level New Business Development Representative in Las Vegas. (Def. Rule 56.1 Stmt. ¶ 15.) Plaintiff was interviewed and recommended by Tom McCormick, defendant's Assistant Vice President and head of the Las Vegas office. (*Id.* ¶ 15.) Approximately eighty-five percent of plaintiff's time was spent calling companies that were not current Donnelley advertisers. (*Id.* ¶ 16.) The remaining fifteen percent of plaintiff's time was spent calling small existing accounts with balances that ranged from $18 to $400 per month. (*Id.*) Plaintiff remained in that position until January 1, 1998, when she was promoted by McCormick to Account Executive within the business development unit. (*Id.* ¶ 17.) Six months later, in July 1998, plaintiff was promoted a second time to the position of full Account Executive where she worked with accounts whose monthly billings ranged between $500 and $1,500. (*Id.* ¶ 18.) In January 1999, after only six months as a full Account Executive, plaintiff was again promoted by McCormick to the position of Sales Training Manager and was voluntarily transferred to Purchase, New York, the location of defendant's sales training department. (*Id.* ¶¶ 19, 20.) As a Sales Training Manager, plaintiff's duties included training new employees to sell telephone directory advertising. (*Id.* ¶ 23.) Plaintiff did not personally make any sales calls. (*Id.* ¶ 24.) After her transfer to New York, plaintiff maintained her residence in Las Vegas and was permitted to work one week out of every month in Las Vegas. (*Id.* ¶ 22.)

In October 1999, an Account Manager position opened in the Las Vegas office. (*Id.* ¶ 27.) Account Managers manage large, complex accounts with minimum monthly billings of $1,800. (*Id.* ¶ 32.) Individuals seeking promotion to Account Manager were required to have "two to three years of proven performance working with medium to large accounts." (*Id.* ¶ 33.) The Account Manager position was considered a "sales track" position whereas the Sales Training Manager position was considered a "management track" position. (*Id.* ¶ 36.)

Hoping to return to Las Vegas, on October 18, 1999, plaintiff sent an e-mail to McCormick stating that she was interested in the vacant position. (*Id.* ¶ 30.) Plaintiff was informed that there were several candidates interested and that she would be notified about a possible interview. (*Id.* ¶ 31.) On December 7, 1999, plaintiff was informed by Ilene Greenberg, defendant's General Training Manager and plaintiff's direct supervisor, that she would not be interviewed for the Account Manager position because McCormick did not believe she was qualified. (*Id.* ¶ 39.) On December 10, 1999, plaintiff met personally with McCormick to discuss the Account Manager position. (*Id.* ¶ 41.) Plaintiff was again informed that she lacked the proper qualifications. (*Id.* ¶ 41.) McCormick also denied plaintiff's request that he create a management position for her, citing budgetary constraints. (*Id.* ¶ 42.) McCormick considered three

facts as to which it is contended that there exists a genuine issue to be tried.

(c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Plaintiff failed to submit a 56.1 statement in opposition to defendant's motion. Nonetheless, so as to not unduly prejudice plaintiff for her attorney's procedural error, we will deem the facts set forth in plaintiff's memorandum of law sufficient to satisfy Rule 56.1 to the extent that the rule is otherwise complied with. However, where a stated fact is nowhere controverted, it will be deemed admitted.

applicants, one female and two male, for the Account Manager position, each of whom had at least three years experience as an Account Executive. (*Id.* ¶¶ 44–47.) After consulting with Greg Wagonseller, a District Sales Manager III who also interviewed the candidates, McCormick promoted Diana Hoglan, who was the highest ranked Account Executive in the Las Vegas office, to the Account Manager position. (*Id.* ¶¶ 49–50.)

Plaintiff contends that in late December 1999, she again e-mailed McCormick and expressed an interest in laterally transferring to the Las Vegas office as an Account Executive. (Williams Aff. ¶ 7.) Plaintiff alleges that on January 3, 2000 she was informed that "an issue of charge backs related to one of my accounts was hindering me from returning to the Las Vegas office as an Account Executive at that point." (*Id.* ¶ 8.)

On or about January 10, 2000, a District Sales Manager III position became available following Wagonseller's resignation. (Def. Rule 56.1 Stmt. ¶ 55.) The position expressly required a minimum of two years experience as a District Sales Manager II. (*Id.* ¶ 56.) Plaintiff was never employed as a District Sales Manager II and concedes that she was not qualified for the posted position. (*Id.* ¶ 57.) McCormack ultimately promoted Dwight Gard-

ner, an African–American male and a District Sales Manager II, to the position of District Sales Manager III. (*Id.* ¶ 58.) The promotion was effective February 16, 2000. (*Id.* ¶ 59.)

On February 14, 2000, plaintiff submitted a Letter of Medical Necessity from her treating neurologist indicating that she was disabled and unable to work. (*Id.* ¶ 60.) Plaintiff informed defendant that she would be unable to return to work until her medical condition stabilized. (*Id.* ¶ 61.) Plaintiff remained unable to work until July 2000, at which point defendant offered her the choice of two Account Executive positions in the Las Vegas office. (*Id.* ¶ 64.)

■ Plaintiff voluntarily tendered her resignation on September 5, 2000. (*Id.* ¶ 65.) On January 5, 2001, plaintiff filed the instant action alleging that defendant's failure to promote her to the Account Manager and District Sales Manager III positions and to create an Account Manager position in Las Vegas was the result of race and sex discrimination. At her deposition, plaintiff elaborated on her Complaint, alleging a discriminatory failure to promote her to the District Manager II position that was vacated by Gardner's departure and a failure to transfer plaintiff laterally to the Account Executive position she previously held in Las Vegas.[2]

---

**2.** Defendant contends that these allegations are beyond the scope of the Complaint and therefore should not be considered. However, the liberal pleading requirements as set for in FED. R. CIV. P. 8 mandate that "[a]ll pleadings shall be so construed as to do substantial justice." Thus, having determined that plaintiff alleged a cause of action for discriminatory conduct under Title VII, we decline to fault plaintiff for failing to specify each basis of Title VII liability. (Complt. ¶¶ 21–25.)

Similarly, we find plaintiff's EEOC charge sufficient to confer jurisdiction over these claims. Plaintiff's charge simply stated that

she "was denied an oppertunity [*sic*] to compete for a promotion." (Dias Decl., Ex. E.) However, a district court has jurisdiction over those allegations that are specifically included in the EEOC charge as well as those that are "reasonably related" to the specified allegations. *See Walsh v. National Westminster Bancorp, Inc.*, 921 F.Supp. 168, 171 (S.D.N.Y. 1995). In determining whether this standard is satisfied, "the Court must take into account the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* Here, the conduct underlying the additional bases of liability raised by plaintiff during her deposition all arose at the same time as, and as part of the

## DISCUSSION

### I. Summary Judgment Standard

Defendant moves for summary judgment pursuant to FED. R. CIV. P. 56. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ticali v. Roman Catholic Diocese of Brooklyn*, 41 F.Supp.2d 249, 254 (E.D.N.Y.1999). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ticali*, 41 F.Supp.2d at 254. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Summary judgment is warranted when the nonmovant has no evidentiary support for an essential element on which it bears the burden of proof. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Silver v. City Univ. of N.Y.*, 947 F.2d 1021, 1022 (2d Cir.1991).

### II. Racial and Sexual Discrimination Under Title VII

Title VII prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). A claim for employment discrimination is governed by the three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Dean v. Westchester County District Attorney's Office*, 119 F.Supp.2d 424, 430 (S.D.N.Y.2000) (Conner, J.). Under this analysis, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption that the employer unlawfully discriminated against the plaintiff is raised and the burden of production then shifts to the employer to "articulate a legitimate, clear, specific and nondiscriminatory reason" for its actions. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). If the employer does so, the presumption of discrimination drops out and the plaintiff has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### A. Plaintiff's Prima Facie Case

To establish a prima facie case of discrimination, a plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action took place under circumstances that give rise to an inference of unlawful discrimination. *See Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001). The burden to establish a prima facie case is *de minimis*. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203–04 (2d Cir.1995). Nonetheless, "a plaintiff must proffer some admissible evidence of

same effort to return to Las Vegas, as the conduct alleged in the EEOC charge. Accordingly, we conclude that the additional

bases are reasonably related to the EEOC charge and that we therefore have jurisdiction to consider the claims.

circumstances that would be sufficient to permit an inference of discriminatory motive." *See Bennett v. Watson Wyatt & Co.,* 136 F.Supp.2d 236, 246 (S.D.N.Y. 2001).

### 1. *Qualified For the Positions*

There is no dispute that plaintiff satisfies the first prima facie requirement, as she is both African American and female. However, defendant argues that plaintiff was not qualified to receive a promotion to the Account Manager, District Sales Manager III, or District Sales Manager II positions. In determining whether an employee is "qualified" under the second prong of the *McDonnell Douglas* analysis, a court must examine "the criteria the employer has specified for the position." *See Thornley v. Penton Publ'g, Inc.,* 104 F.3d 26, 29 (2d Cir.1997).

■ To qualify for promotion to Account Manager, an employee was required to have a minimum of "two to three years of proven performance working with medium to large accounts" whose monthly billings exceed $1,800. (Def. Rule 56.1 Stmt. ¶¶ 11, 33.) As of October 1999, when the position became available, plaintiff did not have the requisite experience. From the date of her hire to January 1998, she served as a New Business Development Representative responsible for contacting only small accounts. Although plaintiff did have six months experience as a full Account Executive responsible for accounts ranging from $500 to $1,800 per month, she had no experience with clients whose account billings were in the range typically serviced by an Account Manager. (*Id.* ¶¶ 11, 18.) Plaintiff seemingly concedes that she was not qualified for the Account Manager position, stating that "it is clear that … the Plaintiff may not have been qualified for the Account Manager position." (Pl. Mem. Opp. Summ. J. at 2.) Accordingly, there is no genuine dispute

that plaintiff was unqualified for the Account Manager promotion and summary judgement is granted for defendant as to this issue.

■ Plaintiff was similarly unqualified for a promotion to the District Sales Manager III position that became available in January 2000. Candidates for the position were required to have a minimum of two years' experience as a District Sales Manager II. (Def. Rule 56.1 Stmt. ¶ 56.) Plaintiff was never employed as a District Sales Manager II and conceded during her deposition that she was not qualified for the promotion. (*Id.* ¶ 17.) Therefore, there is no disputed issue of fact to consider and summary judgment on behalf of defendant is appropriate with respect to this issue.

■ Plaintiff further alleges that defendant's failure to promote her to the District Sales Manager II position left vacant on February 16, 2000 by Gardner's promotion violated Title VII. However, the undisputed evidence demonstrates that two days prior to the vacancy, plaintiff submitted evidence from her doctor stating that she was totally disabled and unable to perform any work. (Def. Rule 56.1 Stmt. ¶ 60.) Therefore, at the time the position became available, plaintiff was unable, and therefore unqualified, to perform the job. *See Valenzuela v. Signode Corp.,* No. 88 Civ. 3301, 1989 WL 88290, at *4 (N.D.Ill. July 28, 1989). Plaintiff's contention that defendant may have known about the job vacancy sometime in January and therefore should have offered the position to plaintiff at that time is merely fanciful speculation. Plaintiff adduces no evidence that defendant was aware of the vacancy prior to Wagonseller's resignation and fails to allege that anyone was considered for the vacant District Manager II position prior to February 16. Accordingly, we grant defendant's motion for summary judgment with respect to this issue.

## 2. *Adverse Employment Action*

Plaintiff additionally contends that defendant violated Title VII by failing to: (1) transfer her laterally to the Account Executive position she previously held in Las Vegas; and (2) create an Account Manager position in Las Vegas. As the Second Circuit explained,

> [a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.

*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) (internal quotation marks and citations omitted). Because neither alleged act constitutes an adverse employment action under the circumstances, summary judgment is appropriate.

A failure to transfer may constitute an adverse employment action under certain circumstances. *See Nonnenmann v. City of New York*, 174 F.Supp.2d 121, 132 (S.D.N.Y.2001). Where "the change in position would have resulted in a significant change in duties and could potentially lead to increased opportunities for advancement," courts have held a failure to transfer to constitute an adverse employment action. *Belch v. Jefferson County*, 108 F.Supp.2d 143, 154 (N.D.N.Y.2000); *see also Meckenberg v. New York City Off–Track Betting*, 42 F.Supp.2d 359, 378 (S.D.N.Y.1999). Here, however, plaintiff has made no allegation that salaries, benefits or opportunities for advancement were

greater in the Las Vegas office. In fact, the undisputed evidence demonstrates that the Las Vegas Account Executive position had a lower salary and was organizationally a step down from her current Sales Training Manager position. (Def. Rule 56.1 Stmt. ¶ 8.) While we do not doubt plaintiff's stated desire to return to Las Vegas, defendant's failure to transfer her immediately to her prior Account Executive position in December 1999 does not constitute an adverse employment action. *See Nonnemann*, 174 F.Supp.2d at 133 ("I have found no case in which denial of a request for a purely lateral transfer was found to constitute an adverse employment action."); *Duncan v. Shalala*, No. 97 Civ. 3607, 2000 WL 1772655, at *4 (E.D.N.Y. Nov. 29, 2000) (holding that the denial of a transfer request so that an employee could live near his wife was not an adverse employment action although "the difference in location is certainly of tantamount [*sic* ] importance to Plaintiff"). Moreover, plaintiff's claim is further undermined by the fact that, upon returning from her disability in July 2000, defendant offered plaintiff a lateral transfer to a choice of two positions in the Las Vegas office. (Def. Rule 56.1 Stmt. ¶ 64.) As a result, defendant's motion for summary judgment is granted with respect to plaintiff's failure to transfer claim.

Plaintiff's claim that defendant failed to create a management position in November 1999 is likewise flawed. Without some evidence "that an employer intended to create a position but then did not because the applicant was [a member of a protected class]," the failure to create a position for a disgruntled employee does not rise to the level of an adverse employment action. *Brooks v. Hevesi*, No. 95 Civ. 3209, 1998 WL 32712, at *2 n.2 (S.D.N.Y. Jan. 29, 1998); *see also Barakat v. Taco Bell, Inc.*, 970 F.Supp. 634, 638 (N.D.Ill. 1997) (granting summary judgment dis-

missing failure to promote claim where the defendant "decided not to create the position ... [and the] [p]laintiff [did] not provide any evidence that this decision was made to keep employees of his racial, ethnic, or religious background out of upper management"). Here, plaintiff offers no evidence suggesting that the decision not to create a position for plaintiff in Las Vegas was motivated by anything other than routine budgetary constraints. Thus, plaintiff has utterly failed to demonstrate that she was the victim of an adverse employment action that was the product of discriminatory intent. As a result, summary judgment must be granted in favor of defendant with respect to this issue.

### III. *Motion For Rule 56 Discovery*

■ FED. R. CIV. P. 56(f) provides that: [s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In spite of the fact that discovery has been extended twice at plaintiff's request, plaintiff contends that this Court should deny defendant's motion in order to permit further discovery. Plaintiff maintains that the affidavit of Alecia Warren–Barnes, in which she alleges, *inter alia*, that McCormick discriminated against her on the basis of race and sex, raises "critical factual issues" that require further discovery. (Pl. Mem. Opp. Summ. J. at 6.) Specifically, plaintiff argues that she should be permitted to: (1) examine McCormick's entire personnel file to determine the number and extent of discriminatory complaints levied against him; (2) examine "all evaluations, environmental surveys, and other data generated out of the Las Vegas office

from 1997 to the (sic) 2000 ... in order to shed light on this alleged pattern of discrimination by Tom McCormick;" (3) re-open McCormick's deposition "so he may be questioned about his work record with [defendant] as it relates to this alleged pattern of discrimination;" and (4) depose Steven Fuel and Wanda Mae, both identified in the Warren–Barnes affidavit. (*Id.*)

To successfully oppose a motion for summary judgment on the basis of Rule 56(f), a party must "submit an affidavit explaining, among other things, what facts are sought and how they are to be obtained; ... what efforts the affiant has made to obtain those facts; and ... why those efforts were unsuccessful." *National Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir.2001) (citations and quotations omitted). Even if the Rule 56(f) motion is properly supported, a court may refuse additional discovery "if it deems the request to be based on speculation as to what potentially could be discovered." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).

Here, plaintiff has failed to comply with the requirements of Rule 56(f) as she has not submitted any affidavit explaining the need for additional discovery. Even if plaintiff had submitted such an affidavit, she has completely failed to set forth what efforts have been made to obtain the requested discovery and to explicate why those efforts were unsuccessful. Plaintiff initially deposed McCormick on October 16, 2001, during which deposition McCormick identified Warren–Barnes as an individual who had accused him of race discrimination. Nonetheless, rather than depose Warren–Barnes at that time, plaintiff waited until after her time to respond to the instant motion had lapsed before requesting, and receiving, an extension of time from this Court to oppose

**180**

the motion. Included among plaintiff's belated opposition papers was the Warren–Barnes affidavit. Plaintiff erroneously seeks to use that affidavit as a justification for further discovery that could have been obtained earlier. However, even if we were to permit additional discovery, the discovery plaintiff requests would not impact this Court's conclusions that plaintiff was unqualified for the Account Manager, District Manager III and District Manager II positions, and that defendant's alleged failure to transfer plaintiff laterally or to create a new Las Vegas position for her were not adverse employment actions. Accordingly, because plaintiff has failed to comply with the procedural requirements of Rule 56(f) and because the requested additional discovery would have no impact on this Court's decision, the Rule 56(f) motion is denied.

## CONCLUSION

For the reasons stated above, we grant defendant's motion for summary judgment and deny plaintiff's Rule 56(f) motion for additional discovery. The action is dismissed with prejudice.

SO ORDERED.